AETNA INSURANCE COMPANY *v.* DETROIT & TOLEDO
SHORE LINE RAILROAD COMPANY.

1. APPEAL AND ERROR—NONJURY CASE—COMMON PLEAS COURT.
   The decision of the common pleas court judge on a question of
   fact in a nonjury case should not be disturbed on appeal to
   circuit court, where testimonially supported.

2. RAILROADS—NEGLIGENCE—QUESTION FOR TRIER OF FACTS—AUTO-
   MOBILES—CROSSINGS.
   Whether or not engineer and fireman were negligent in failing
   to stop train before reaching crossing on which plaintiff's
   subrogor's car had become stalled *held,* a question of fact
   for determination by trial court in nonjury case, where it
   appears train was traveling 20 to 25 miles per hour in city
   and engineer first saw the stalled car while some 1,400 to
   1,500 feet away but did nothing about stopping until about
   half that distance when it was too late to avoid collision.

3. SAME—AUTOMOBILES—CONTRIBUTORY NEGLIGENCE.
   Motorist whose new car stalled at railroad crossing was not
   guilty of contributory negligence as a matter of law for
   failing to signal to the train of his danger while it was still
   possible for it to stop, under evidence showing that preoccupa-
   tion of train crew with other matters would have precluded
   observation of the signal, that he did not know the stopping
   distance of the train, its speed or distance away or that he
   would be unsuccessful in his efforts to move the car.

4. SAME—OBSERVATION OF AUTOMOBILE AT CROSSING—NEGLIGENCE.
   The negligence of a train crew which fails to keep observing
   automobile setting on the tracks after having observed it in
   time to stop the train would be a question for the trier of
   the facts in an action arising out of the ensuing collision.

Appeal from Wayne; Neuenfelt (Lila M.), J.
Submitted April 8, 1958. (Docket No. 3, Calendar
No. 47,245.) Decided December 3, 1958.

REFERENCES FOR POINTS IN HEADNOTES
[2] 44 Am Jur, Railroads § 539.
   Doctrine of last clear chance.  92 ALR 47, 119 ALR 1041.
[3] 44 Am Jur, Railroads § 570.

Case by Aetna Insurance Company, a foreign corporation, subrogee of Dan Stoyanovich, against the Detroit & Toledo Shore Line Railroad Company, a Michigan corporation, for property damage resulting from grade-crossing collision. Judgment for plaintiff in common pleas court. Judgment for defendant in circuit court. Plaintiff appeals. Reversed and remanded for entry of judgment for plaintiff.

*Reginald S. Johnson,* for plaintiff.

*F. B. Henderson* and *E. C. Opperthauser,* for defendant.

Voelker, J. Appellant insurance company appeals from a judgment of the circuit court of the county of Wayne reversing a decision of the common pleas court for the city of Detroit, sitting without a jury, which granted judgment in its favor for property damage suffered by plaintiff's subrogor.

Plaintiff's proofs on its main case disclose that about 7:30 on the morning of October 4, 1955, the plaintiff's subrogor was driving his new 1956 Ford automobile east on Third street in Monroe, Michigan. When the car approached the tracks of defendant-appellee its motor stalled and died. The driver shifted the car into first gear and attempted to start the engine, whereupon the automobile moved onto the tracks, where once again it stalled. The driver then repeatedly attempted to start the motor, without success, although the engine did start momentarily one other time.

While the car was thus stalled on the tracks with its dead motor and the driver was continuing his efforts to get it to function, he observed the train of defendant-appellee approaching from his left from the north. When the driver first saw the train it was

at or somewhere north of Front street, which street runs parallel to and 2 blocks to the north of the street on which the driver was traveling. By deposition of the train crew obtained and introduced by plaintiff we learn that the train was then going 20 to 25 miles per hour. The engineer first saw the car of plaintiff's subrogor when it was "setting on the tracks" ahead of him and the engine was still some 1,400 to 1,500 feet away from the Third street crossing and before it had reached intervening Front street. The engineer testified he did not keep watching the car after he first saw it because it was common for auto drivers to stop or hesitate on or near the tracks, and moreover he and the fireman were then obliged to check certain block signal lights and the train order board. The crossing at which plaintiff's subrogor's auto was stalled had 4 sets of tracks.

The driver of the stalled auto did not signal the train at any time, but with the assistance of a passerby continued his efforts to move his car off the tracks. This kept on until the engine had approached First street, described as one street north of and parallel with Third street, about 730 feet distant, when he leapt out of his car and ran for it. But it was then too late for a collision to be averted, the train traveling some 200 to 300 feet beyond the crossing and the point of impact.

Our record is not too clear just what the engineer and fireman were observing, if anything, just prior to these events, but it seems a fair inference from their testimony that both observed the motorist's danger at approximately the same time (when the driver fled his car), the fireman testifying that when he "hollered" to the engineer to put on the emergency brakes he then saw that they were on. It is clear that the fireman did not see the plight of the car and motorist till he shouted to the engineer; and it appears that both the engineer and fireman were pre-

occupied with other duties past a point where they could have avoided the collision.

Numerous grounds and issues are raised by the parties in their briefs, but the primary questions boil down to whether the auto driver may be said to have been guilty of contributory negligence as a matter of law and whether the testimony properly presented a question of fact on the issue of the railroad's negligence. The circuit court by its decision of reversal by necessary implication resolved one or both of these issues in defendant's favor. We shall accordingly discuss both.

With respect to the railroad's negligence we regard as significant that neither the engineer nor fireman took alarm or did anything until they saw the driver run from the car, at which time the train was at or near the First street crossing, upwards of 730 feet north of the point of impact. This inattention was explained, as noted, by the need to attend to other duties, as well as because of the fact that it was common for the train crew to observe autos standing at or near crossings. Did this present a situation from which the trial judge could have reasonably concluded that the defendant was negligent? We think it did. While it may be common to see a car standing at or near railroad tracks, we think it is considerably less common that the same car would have remained there unendangered for the length of time which elapsed since this car was first observed.

We also find untenable the claim of appellee that as a matter of law the driver of the automobile was guilty of contributory negligence for failing to signal to the train of his danger while it was still possible for the train timely to stop. Viewing the testimony in the light most favorable to plaintiff, it appears that even had the driver signalled, the admitted preoccupation of the train crew with other matters would have prevented any signal from being

.observed. In short, even conceding arguendo, the possible negligence of the car driver, what he did or neglected to do appears not to have mattered, and therefore was not a contributing or proximate cause of this accident. At least this seems to be a reasonable inference from the testimony of the train crew.

Faced with what he was faced with the car driver had rapidly to make 3 choices: he could desert his car and run for it; he could stand by and try to signal the train; he could try to save his new car. He tried the latter course and failed. Not knowing the stopping distance of the train, the speed at which it was travelling, its exact distance down the track when it was first observed, that the crew had not discovered his plight, and, also, not knowing that he would be unsuccessful in moving his car, we do not think that it can be held that his actions amounted to contributory negligence as a matter of law. In our view it became instead a testimonially supported question of fact, and therefore we think the decision of the trial court sitting without a jury should not have been disturbed on appeal to circuit court.

Appellee cites as persuasive of its due care *Frost v. Milwaukee & N. R. Co.,* 96 Mich 470, but there it appears that the engineer did take alarm and apply the brakes as soon as he could reasonably be held to have suspected danger whereas in the instant case the train crew failed to take alarm until the train was within 730 feet of the same stalled auto it had seen much earlier, and when it was too late to stop. In the instant case the locomotive crew observed the stalled auto while the train was a considerable distance from the crossing, and when it could have timely stopped, but because both crew members diverted their attention to other matters and both failed to make a continuing observation of the stalled auto, the train had passed the point of ef-

fective stopping when they saw its driver run for safety.

If the engineer, after performing his other duties, saw the same auto he had observed earlier still "setting on the tracks" at a point where he could still effectively stop, and still did nothing, that would seem to present a clear question of fact on the issue of the defendant's negligence; if, as appears more likely from his testimony, he did not again look at the "setting" automobile until it was too late, that likewise would seem to present a question of fact on the issue of its negligence.

We are aware that train crews must occasionally make observations of necessary railroad signals as well as of persons and vehicles at crossings. But their failure in this case to take any precautions whatsoever for the safety of the driver of the auto and the auto itself after first observing it stopped on or near the Third street tracks in our opinion raised a question of fact for the determination of the trial judge as to the train crew's negligence. It follows that the circuit court, sitting as an appellate court, erred when, as a matter of law, it apparently found the railroad free of any negligence. Defendant's negligence may be predicated among other things on the failure of at least one member of the locomotive crew to keep a weather eye on the car after they first saw it in a place of apparent or probable danger. This is not to say or hold that train crews must apply their emergency brakes every time they see a car stopped at or near the tracks ahead of them; what we do hold is that failure here to pay any further heed to such a car until it was too late to avoid hitting it raised a question of fact on the issue of the railroad's negligence. In any event we cannot bring ourselves to join the learned circuit court in saying, in effect, that as a matter of law its conduct amounted to an exercise of reasonable care.

The judgment of the circuit court is therefore reversed and the cause remanded for restoration of the judgment for plaintiff in the common pleas court, with costs to appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.